IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICIA A. ROSS                    §
                                    §
                  Plaintiff,        §
                                    § Civil Action No. 3:05-CV-1324-D
VS.                                 §
                                    §
JO ANNE B. BARNHART,                §
COMMISSIONER OF                     §
SOCIAL SECURITY,                    §
                                    §
                  Defendant.        §

<u>MEMORANDUM OPINION</u>

Patricia A. Ross ("Ross") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under title XVI of the Act. For the reasons that follow, the Commissioner's decision is AFFIRMED IN PART and VACATED IN PART and REMANDED for further proceedings consistent with this memorandum opinion.

I

Ross was born on May 11, 1955, has a ninth grade education, and has past work experience as an office cleaner, housekeeper, and sales clerk. She applied for SSI benefits in 1994, alleging that she became disabled on April 15, 1994 due to limitations imposed by a herniated disc in her lower back, a herniated disc in the cervical spine, obesity, and de-conditioning (the "first application"). The Commissioner found Ross to be disabled on the

date of her first application and granted benefits in 1995.   The
Commissioner initiated a continuing disability determination in
1998, and Ross appeared *pro se* at two hearings before the
Administrative Law Judge ("ALJ").   The ALJ issued an opinion on
August 23, 2000, terminating Ross's benefits on the ground that she
had regained the capacity to perform sedentary work.   On September
1, 2000 Ross sought review by the Appeals Council.

On March 15, 2001 Ross filed a new application for SSI
benefits, alleging that she had been disabled since April 15, 1994
due to breast cancer and back pain/injury (the "second
application").   Her second application was denied initially and on
reconsideration, and in November 2001 she requested a hearing.

On March 8, 2002 the Appeals Council denied Ross's request for
review of the ALJ's termination of benefits awarded under her first
application.   The ALJ's decision thus became the final decision of
the Commissioner concerning the first application.   Ross thereafter
sought judicial review of that decision in this court.   *See Ross v.
Barnhart*, No. 3:02-CV-0891-L (N.D. Tex. 2002) (Lindsay, J.).

On August 28, 2002 the ALJ assigned to Ross's second
application conducted a hearing where Ross was represented by
counsel.   On September 17, 2002 the ALJ applied the required
five-step sequential inquiry and concluded in a written decision
that Ross was not disabled.   The ALJ found at step two that her
diabetes mellitus, obesity, cardiomyopathy, mild degenerative disc

- 2 -

disease, and breast cancer (in remission) were severe impairments. At step three, he found that her impairments were not severe enough to meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four, he found that she retained the residual functional capacity to "sit six hours at one-hour intervals and stand two hours at thirty-minute intervals in an eight-hour day, and to lift ten pounds occasionally"; she "can occasionally bend and crouch, and she cannot climb or crawl"; and she "must work in a clean environment, and she must avoid manipulating sharp objects with her right hand and arm." R. 13.  At step five, he shifted the burden to the Commissioner and, using the Medical-Vocational Guidelines of Subpart P, Appendix 2, determined that, despite her exertional limitations, she could perform a significant number of jobs in the national economy and was not disabled.[1]

On December 11, 2002 the Commissioner filed a motion to remand Ross's appeal of the decision terminating benefits awarded under her first application for further administrative proceedings. Judge Lindsay remanded the case on July 8, 2004.

On May 6, 2005 the Appeals Council declined to review the ALJ's decision denying Ross's second application.  The ALJ's September 2002 decision thus became the final decision of the

---

[1]Ross filed a third application for benefits in October 2002. The application is not relevant to the court's disposition of this case.

Commissioner on the second application.

Ross seeks judicial review of the Commissioner's denial of her second application, contending principally that the Appeals Council applied an erroneous legal standard to that application, and that the question on review is whether the ALJ properly denied benefits for the period March 2001 to September 2002.[2]  She also alleges that the ALJ's decision is not supported by substantial evidence because he relied on an incomplete record and failed to give controlling weight to her treating physician.[3]

---

[2]At one point in her brief, Ross refers to the relevant period as being March 2001 to March 2002.  *See* P. Br. 5.  She refers elsewhere, however, to the period March 2001 and September 2002, *see id.* at 19, 20, as does the Commissioner, *see* D. Br. 7.

[3]Although the timing of the filing of Ross's reply brief does not affect the court's decision, the court addresses for her counsel's future reference an error in the procedural statement contained in the reply brief.  *See* P. Reply Br. 1.  Ross contends the calculation of the due date for her reply brief is determined under Fed. R. Civ. P. 5(b)(2)(D), which she says adds three days to the prescribed filing period.  The court disagrees.  Rule 6(e) provides that "[w]henever a party must or may act within a prescribed period *after service* and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are added after the prescribed period would otherwise expire under subdivision (a)."  (emphasis added).  But N.D. Tex. Civ. R. 7.1(f), which governs the filing of reply briefs (the court's scheduling order also incorporated Rule 7.1(f)), provides that "a party who has filed an opposed motion may file a reply brief within 15 days from the date the response *is filed*." (emphasis added).  In other words, the Rule ties the reply deadline to the date the response is *filed*, not to the day it is *served*.  Therefore, Rule 6(e) does not add three days to the 15-day period of Rule 7.1(f).

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnote omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)

(per curiam )).  "To make a finding of no substantial evidence, [the court] must conclude that there is a conspicuous absence of credible choices or no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (internal quotation marks omitted)).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry.  *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 416.920(a)(4).  The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment

prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez v. Chater*, 64 F.3d 172, 173-74 (5th Cir. 1995) (per curiam); 20 C.F.R. § 416.920(a)(4).  "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).  At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*.  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*.  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Ross first contends that, after Judge Lindsay vacated the decision terminating the benefits awarded her under her first application, the applicable legal standard for evaluating her second application changed. Therefore, the Appeals Council erred in concluding that the denial of her first application could serve as a basis to deny her benefits under her second application, because the ALJ did not apply the applicable legal standard.

A

Ross argues that when in 2004 Judge Lindsay vacated the decision terminating benefits awarded her under her first application, this changed the legal status that she had in September 2002, when the ALJ denied her second application. She maintains that the denial of benefits for the period March 2001 to September 2002 is legally improper because it is not based on the correct legal standard. Ross reasons that the ALJ treated her second application as an initial disability determination and placed the burden of proof on her for the first four steps and on the Commissioner only at step five. According to Ross, her legal status changed as a result of the remand order because, under 20 C.F.R. § 404.1597a(I), the decision terminating her benefits was of no legal effect. Consequently, she no longer bore the burden of proof but instead regained her legal status as a disabled individual. Benefits for the relevant time period——March 2001 to

September 2002—could only have been denied by applying the medical improvement standard, which placed the burden of proof on the government.

The Commissioner counters that the ALJ properly applied the five-step initial disability determination to Ross's second application because she brought it before the Commissioner as a new application.  She maintains that "[t]he regulations clearly state that 'these rules [the five-step sequential evaluation process] apply to you if you are age 18 or older and you file an application for [SSI] disability benefits."  D. Br. 6 (quoting 20 C.F.R. § 416.920(a)(2) (emphasis omitted)).  The Commissioner argues that she was obligated to evaluate Ross's second application under the five-step sequential evaluation process because Ross filed it as a new application.  She cites the Fifth Circuit's decision in *Frizzell v. Sullivan*, 937 F.2d 254 (5th Cir. 1991) (per curiam), arguing that the court adopted the Supreme Court's holding in *Sullivan v. Finkelstein*, 496 U.S. 617 (1990), that each final decision of the Commissioner is reviewed as a separate piece of litigation.  She also posits that the Program Operations Manual System ("POMS") states that if a prior claim was a continuing disability review cessation, a subsequent claim may not be a duplicate.[4]  And she maintains that, although the ALJ may

---

[4]The Commissioner also contends that because Ross did not present any new or material evidence to the Appeals Council concerning the second application, the Appeals Council's decision

consolidate the claims, under the POMS he is not required to, so the Commissioner was correct in not combining them.

B

Although Ross's argument is innovative, she has failed to establish reversible error. Assuming her legal status with respect to her *first* application did change because of Judge Lindsay's remand order, she has not shown that any statute, case, regulation, or other binding material required the Appeals Council to disturb the ALJ's decision on her *second* application. In other words, she has shown no authority that required the Appeals Council to reverse or remand the ALJ's denial of her second application on the basis that, after the ALJ ruled against her, but before the Appeals Council acted, the decision terminating benefits under the first application was of no legal effect.[5] Although the Commissioner

_____

denying her request for review made the ALJ's September 17, 2002 decision the final decision of the Commissioner, under 20 C.F.R. § 416.1481.   She maintains that because Judge Lindsay did not remand Ross's first application until 2004, Ross's legal status had not changed before the Commissioner's September 17, 2002 final decision denying her second application.   The court need not reach this contention to reject Ross's first argument.

[5]Ross's reliance on *Hayden v. Barnhart*, 374 F.3d 986, 994 (10th Cir. 2004) (per curiam), is misplaced.   In *Hayden* the Tenth Circuit held, in pertinent part, that "when a court reverses an ALJ's decision terminating benefits," the claimant returns to disabled status, and "[i]t is up to the agency to decide whether to begin new termination proceedings."   *Hayden* does not address, however, the impact of the reversal on a separate initial benefits decision that was properly made before the reversal of the termination ruling.   Ross's argument that the decision concerning her first application impacts the one denying her second application is essentially *ipse dixit*.

- 10 -

acknowledges that an ALJ can consolidate claims, and the Appeals Council might have deemed it appropriate to remand both applications so that the ALJ could consider them in tandem, there was no legal requirement that this be done, and thus no reversible legal error.

This conclusion is at least consistent with language in the Supreme Court's opinion in *Finkelstein*, where the Court wrote that "at least in the context of § 405(g), *each final decision* of the [Commissioner] will be reviewable by *a separate piece of litigation*." *Finkelstein*, 496 U.S. at 625 (emphasis added). Accordingly, the court's conclusion that it was not error for the Appeals Council to review Ross's two applications without combining them is not incongruous with *Finkelstein*'s recognition that multiple decisions by the Commissioner may result in separate litigation.[6]   The court thus concludes that Ross has failed to demonstrate that the Appeals Council committed an error of law that requires reversal.

The court therefore affirms the Commissioner's decision in this respect.   In reaching this conclusion, the court does not suggest that the Commissioner's decision denying benefits in

---

[6]Contrary to the Commissioner's assertion that language in *Finkelstein* is controlling here, the Court held only that "a remand order is a final judgment for the purpose of establishing appellate jurisdiction over appeals by the [Commissioner], where the remand order invalidated a Social Security regulation." *Frizzell*, 937 F.2d at 256 (citing *Finkelstein*, 496 U.S. at 625-28).

response to Ross's *second* application precludes or limits her ability to recover benefits awarded her under her *first* application.

IV

Ross next contends the ALJ's decision is not supported by substantial evidence because it is based on an incomplete administrative record and on improper disregard of the medical opinion evidence.

A

Ross urges that the medical expert was not provided with any of the medical evidence from the period before 1998 and had only portions of the evidence from 1998 to 1999.  She also complains that the record the ALJ reviewed did not contain the records and opinions of her cancer physician, Dr. Raborn,[7] which indicated that she was disabled in February 2000 and would remain so until her cancer treatment concluded, and did not contain supporting treatment records found in the 2002 administrative record.[8]

---

[7]Although Ross sometimes spells his name "Rabon," *see* P. Br. 21, the court will use "Dr. Raborn" because this is the spelling she uses most often, *see* P. Br. 10-11, and it is the one the Commissioner uses, *see* D. Br. 8.  The court cannot determine the physician's full name or verify the correct spelling because Ross cites the 2002 administrative record developed concerning her first application (which is not before the court).

[8]Ross also contends, *inter alia*, that the rationale the ALJ followed "demonstrates the consequence of placing the burden on the wrong party."  P. Br. 21.  This argument fails in view of the court's decision above that the Commissioner did not commit reversible error in treating the second application separately and

Ross acknowledges the appellate standard in this circuit, i.e., whether the Commissioner applied the proper legal standard and whether the decision is supported by substantial evidence. She contends, based on the ground the court has already rejected, that the Commissioner applied an improper legal standard. Ross also argues that the ALJ's analysis of the evidence is undermined because the administrative record did not contain all the material medical evidence, and that the ALJ failed to give legitimate reasons for rejecting the medical opinion of Daniel Maynard, D.O. ("Dr. Maynard"), her treating physician, indicating she is disabled, and failed to recontact Dr. Maynard.

B

As a threshold matter, it is not clear from Ross's brief what she contends is the applicable standard of review for her arguments concerning the completeness of the medical evidence and the rejection of Dr. Maynard's opinion. It is not enough for Ross to complain about what the ALJ did, advance the general assertion that the ALJ erred, or assert that his analysis was "flawed." *See* P. Br. 21. Generally, when a social security plaintiff "'does not otherwise identify the legal standard under which she seeks review, the court . . . will address her arguments under the settled principles that resolution of conflicting evidence is for the

---

applying the five-step sequential process under which Ross had the burden of proof at the first four steps.

Commissioner and that the court must affirm the Commissioner's findings if they are supported by substantial evidence.'" *Parham v. Barnhart*, No. 3:05-CV-1043-D, slip op. at 11 (N.D. Tex. Apr. 28, 2006) (Fitzwater, J.) (alterations in original omitted) (quoting *LeCoq v. Barnhart*, No. 3:04-CV-0825-D, slip op. at 12 (N.D. Tex. Aug. 24, 2005) (Fitzwater, J.)).  And "[r]eversal of the ALJ's decision is appropriate 'only if the applicant shows that [she] was prejudiced.'"  *Id.* (quoting *Ripley*, 67 F.3d at 557).

C

Assuming *arguendo* that Ross properly raised the contention that the administrative record was incomplete, she has failed to make the requisite showing of reversible error.  The ALJ has a duty to develop the facts fully and fairly, and if he does not, his decision is not substantially justified.  *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley*, 67 F.3d at 557).  But the ALJ's failure to request additional information is reversible error only if prejudicial.  *See id.*  The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision.  *Id.*

As to her first assertion——that the record was incomplete because it did not contain records before 1998 and had only portions of the evidence from 1998 to 1999——she fails to point to any specific evidence from that period that would have led to a

- 14 -

different decision.   Concerning her second assertion——that the record was incomplete because it lacked the opinions of Dr. Raborn that Ross was disabled in February 2000 and would remain so until she completed her cancer treatment——she also fails to demonstrate prejudice.   The ALJ concluded, and Ross does not contest, that her cancer was in remission as of February 2001.   *See also* R. 152 (reflecting results of April 2001 mammogram for breast cancer that indicated no mammographic evidence of malignancy).   The reports that she maintains demonstrate her disability due to cancer treatment are thus inapposite to the question before the ALJ: whether Ross was disabled and entitled to benefits when she filed her second application in March 2001.   *See* 20 C.F.R. § 416.335. Accordingly, the court concludes that Ross has failed to show reversible error based on an incomplete administrative record.

D

Ross also contends the ALJ failed to give legitimate reasons for rejecting Dr. Maynard's medical opinion indicating that she is disabled, and that the ALJ prejudiced her by failing to recontact Dr. Maynard for clarification.[9]

---

[9]In Ross's factual recitation in her opening brief, she alleges that Robert Burns, M.D. ("Dr. Burns"), her chemotherapist, had also opined that she was disabled.  *See* P. Br. 11; R. 100-02. The argument in her brief, however, is directed solely to the ALJ's failure to give controlling weight to the opinion of Dr. Maynard. *See* P. Br. 21.   Because she presents no argument in her opening brief as to Dr. Burns's opinion, the court declines to consider facts that are mentioned but on which she does not premise a claim of error.

1

Dr. Maynard, Ross's treating physician, completed an original medical source statement that Ross alleges formed the basis of the Commissioner's 1995 disability determination.  She also relies on his November 1, 2000 Medical Source Statement of Ability to do Work-Related Activities (Physical), in which Dr. Maynard opined that Ross can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; that she can stand and/or walk less than 2 hours in an 8-hour workday; that she can sit less than about 6 hours in an 8-hour workday, that her ability to push and/or pull is limited in her upper extremities; that she could never climb, balance, kneel, crouch, or crawl; and that she had a limited ability to reach in all directions.

The ALJ gave no weight the conclusion of Dr. Maynard's report that Ross is unable to stand 2 hours and sit 6 hours in an 8-hour workday "because from all indication, this opinion is based on an evaluation for a recommendation for physical therapy dated October 9, 2000, and not on an official functional capacity evaluation." R. 13.  Furthermore, he stated that his opinion of the report was based on testimony received from Charles M. Murphy, M.D. ("Dr. Murphy") during the hearing.  *Id.*  Dr. Murphy is a non-examining consulting physician who testified at the hearing after conducting a review of the medical evidence submitted.

The ALJ also accorded little weight to the State agency

physician opinions of August 9, 2001 and October 29, 2001 that Ross had greater exertional abilities, that is, that she "can lift from twenty five to fifty pounds, and sit six hours and stand six hours during an eight-hour day." R. 13.  Rather, the ALJ found Ross to be more severely limited due to pain, and he concurred with Dr. Murphy in this respect.  *Id.* at 13-14.  Dr. Murphy testified that Ross could, *inter alia,* lift up to 10 pounds occasionally and less than 10 pounds frequently, push and pull occasionally, sit 6 out of 8 hours a day at one hour intervals, and stand and walk 1 out of 8 hours a day at 30-minute intervals.  *Id.* at 302.

2

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"  *Newton*, 209 F.3d at 455 (ellipsis in original) (quoting *Martinez*, 64 F.3d at 176).  Nevertheless,

> [e]ven though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is

>           unsupported by medically acceptable clinical,
>           laboratory, or diagnostic techniques, or is
>           otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 455-56 (citations, quotation marks, and

brackets omitted).  In some circumstances, the ALJ must analyze a

treating physician's opinion in light of six factors contained in

20 C.F.R. § 404.1527(d) before giving little or no weight to that

opinion.  *E.g., Parham*, No. 3:05-CV-1043-D, slip op. at 17-18.[10]

     The ALJ must recontact a treating physician when the evidence

is inadequate for the Commissioner to determine whether the

claimant is disabled.  *See* 20 C.F.R. § 404.1512(e).[11]

_____

     [10]The same six factors apply in the context of SSI benefits.
*See* 20 C.F.R. § 416.927(d) (2006).

     [11]Social Security regulation 20 C.F.R. § 404.1512(e)(1)
provides:

>           (e) Recontacting medical sources. When the
>           evidence we received from your treating
>           physician or psychologist or other medical
>           source is inadequate for us to determine
>           whether you are disabled, we will need
>           additional    information    to    reach    a
>           determination or a decision. To obtain the
>           information, we will take the following
>           actions.

>           (1) We will first recontact your treating
>           physician or psychologist or other medical
>           source to determine whether the additional
>           information we need is readily available. We
>           will seek additional evidence or clarification
>           from your medical source when the report from
>           your medical source contains a conflict or
>           ambiguity that must be resolved, the report
>           does    not    contain    all    the    necessary
>           information, or does not appear to be based on
>           medically acceptable clinical and laboratory

Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion.

*Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 1996 WL 374183, at *6 (July 2, 1996) ("SSR 96-5p") (internal quotation marks omitted).

3

This court has previously concluded that, in certain circumstances, discounting a treating physician's opinion in the absence of reliable medical evidence of another examining or treating physician constitutes reversible error in light of *Newton*. *See, e.g., Parham*, No. 3:05-CV-1043-D, slip op. at 18 (citing *Segovia v. Barnhart*, No. 3:04-CV-2246-D, slip op. at 13-14 (N.D. Tex. Aug. 9, 2005) (Fitzwater, J.); *Sailsbury v. Comm'r of Soc. Sec.*, 2003 U.S. Dist. LEXIS 21327, at *12 (N.D. Tex. Oct. 31, 2003) (Fitzwater, J.)). The ALJ here rejected the opinion of Dr. Maynard——Ross's treating physician——in favor of Dr. Murphy——a consulting non-examining physician——without considering and addressing the factors set forth in 20 C.F.R. § 416.927(d) (2006). Ross, however, neither bases a claim of error on the ALJ's failure

diagnostic techniques . . . .

20 C.F.R. § 404.1512(e)(1).

to address the six factors under § 404.1527(d) or § 416.927(d) nor cites to the applicable regulation or to *Newton*.  This court will not consider forfeited error of this type.  *See Parham*, No. 3:05-CV-1043-D, slip op. at 19 n.4.  Consequently, the court will consider only the arguments that Ross actually raises:  that the ALJ's proffered reason for rejecting Dr. Maynard's opinion—that it was based on an evaluation for a recommendation for physical therapy and not on an official functional capacity evaluation—constituted error and that Dr. Maynard should have been recontacted.

As a preliminary matter, the ALJ observed that "from all indication" Dr. Maynard's report was "based on" an evaluation for a recommendation for physical therapy and not on an official functional capacity evaluation.  R. 13.  By stating "from all indication," the ALJ appears to express some uncertainty regarding the context in which Dr. Maynard rendered his opinion.  That is, it is possible that Dr. Maynard's opinion was not based on an evaluation for a recommendation for physical therapy but was based on something else.  If the ALJ could not "ascertain the basis of [Dr. Maynard's] opinion from the case record," he was obligated to recontact Dr. Maynard because the ALJ found that the evidence did not support the physician's opinion.  *See* SSR 96-5p, 1996 WL

374183, at *6; *see also* R. 13.[12]

Even if the ALJ was not required, however, to recontact Dr.
Maynard, he was only authorized to reject Dr. Maynard's opinion for
good cause. Rejecting Dr. Maynard's opinion for the sole (or even
primary) reason that it was based on an evaluation for a
recommendation for physical therapy and not on an official
functional capacity evaluation does not of itself constitute "good
cause." *See Newton*, 209 F.3d at 455 ("The ALJ's decision must
stand or fall with the reasons set forth in the ALJ's decision, as
adopted by the Appeals Council."). The ALJ did not find that Dr.
Maynard's evidence was conclusory, unsupported by medically
acceptable clinical, laboratory, or diagnostic techniques, or
otherwise unsupported by the evidence. *See id.* at 455-56
(discussing factors relevant to good cause analysis). Dr.
Maynard's opinion provided detailed information on Ross's
functional capacity limits, including her lifting/carrying,
standing/walking, sitting, and pushing/pulling capabilities, and

_____

[12]At several points in Dr. Murphy's testimony, he emphasizes
that he lacked Ross's medical records for certain time periods and
illnesses. *See* R. 297-98 ("First of all the——I don't see any
medical evidence until 1998, and then there were just some studies
done at that time, June and September 1998 . . . . We had very few
records, I don't have a surgical report or early chemotherapy
reports at all . . . ."); *id.* at 298 ("[W]e really don't, we don't
have much at all here."); *id.* at 299 ("We have very little in the
way of records regarding the back impairment . . . ."). Ross does
not, however, argue that it was error to accept Dr. Murphy's
opinion without providing pertinent medical records and
recontacting him. Her argument that the administrative record was
incomplete is addressed *supra* at § IV(C).

limitations on her postural, manipulative, visual/communicative, and environmental abilities. *See* R. 244-46. Assuming that it was based on an evaluation for a recommendation for physical therapy and not on an official functional capacity evaluation does not explain why the information contained in the report was entitled to less deference. Indeed, if an ALJ could reject the opinion of a treating physician concerning a patient's functional capacity simply because the physician failed to offer the opinion based on an "official" functional capacity evaluation and for purposes of the hearing, this would impose an entirely new and burdensome requirement on a social security claimaint seeking relief based on functional limitations. The Commissioner points to no statute or regulation that requires a claimant to submit a treating physician's opinion in such format.

4

The error that the court has found will support reversal, of course, only if Ross has suffered prejudice as a result. *See Mettlen v. Barnhart*, 88 Fed. Appx. 793 (5th Cir. 2004) (per curiam) (unpublished opinion) ("In order to obtain reversal, [plaintiff] must show both error and some resulting prejudice."). "Prejudice can be established by showing that additional considerations 'might have led to a different decision.'" *Id.* (quoting *Newton*, 209 F.3d at 458). Here, the possibility of prejudice is shown because, had the ALJ given controlling weight to Dr. Maynard's opinion, he

apparently would have been required to find at step four of the sequential process that she retained less residual functional capacity, and this finding could have impacted his evaluation of the evidence at step five.

The ALJ is of course free to find on remand that the evidence does not support the conclusion that Ross is disabled. The Commissioner may also decide to combine the pending termination proceeding with the instant one, although the court does not suggest that she is obligated to do so.

*     *     *

The Commissioner's decision is AFFIRMED IN PART and VACATED IN PART and REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

June 1, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 23 -